IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| DEL MONTE FRESH PRODUCE (SOUTHWEST), INC., an Arizona corporation,<br><br>Plaintiff,<br><br>v.<br><br>S&H FARM LABOR LLC, d/b/a S&I LABOR CONTRACTOR, an Arizona corporation; Salvador URENA, an individual; and Hermila URENA, an individual.<br><br>Defendants. | CASE NO:<br><br>PLAINTIFF DEL MONTE FRESH PRODUCE (SOUTHWEST)'S **COMPLAINT FOR DAMAGES** |

**PLAINTIFF DEL MONTE FRESH PRODUCE (SOUTHWEST)'S COMPLAINT**

Plaintiff Del Monte Fresh Produce (Southwest), Inc. ("Del Monte Southwest"), based on information and belief hereby alleges:

**JURISDICTION AND VENUE**

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 in that it contains a federal question of law based upon the MIGRANT AND SEASONAL AGRICULTURAL WORKER PROTECTION ACT 29 U.S.C. § 1800, *et seq.*

2. Venue is proper in this Court pursuant to the subject agreement of the parties. *See* Farm Labor Contract, dated December 28, 2010, ¶ 11(b), (hereafter "the Agreement," attached hereto as Exhibit 1).

3. Del Monte Southwest and S&H Farm specifically consented to personal jurisdiction in the United States District Court of the Southern District of Florida when the parties:

> "irrevocably: (a) agree[d] that venue for any suit, action or proceeding of any nature whatsoever arising out of, or in any way connected with, this Agreement shall lie exclusively in Miami, Florida or the federal courts in and for Miami, Florida; (b) waive[d], the fullest extent permitted by law, any objection which they may have to the laying of venue in the above-described courts, and (c) waive[d] any claim, defense, or objection that any suit, action, or proceeding brought in any of the above-described has been brought in an inconvenient forum." *See* Exhibit 1, 11(b).

4. This Court has personal jurisdiction over Defendants Salvador Urena ("Mr. Urena") and Hermila Urena ("Ms. Urena," and collectively with Mr. Urena the "Urenas") based on the Promissory Note (the "Promissory Note" as defined herein in ¶ 25) entered into by Del Monte Southwest, S&H Farm, Mr. Urena and Ms. Urena on September 2, 2011 attached hereto as Exhibit 2.

5. The Promissory Note "expressly incorporated by reference" all of the "terms and conditions set forth in [the Agreement]." *See* first paragraph (unnumbered) of Exhibit 2.

6. Because the Promissory Note adopted the venue provision of the Agreement, Mr. Urena and Ms. Urena have consented to the venue and jurisdiction of this Court.

## PARTIES

7. Del Monte Southwest is incorporated under the laws of Arizona. Del Monte Southwest is located at 14550 West La Estrella, Goodyear, Arizona 85338.

8. Del Monte Southwest's primary business is to grow and harvest high-quality fruits and vegetables.

9. S&H Farm Labor LLC is an Arizona limited liability corporation located at 1020 Navajo Avenue, Parker, Arizona 85344 and its primary business is to provide qualified and

competent workers to perform field work and equipment operation for the growing and harvesting of produce.

11. Upon information and belief, S&H Farm Labor LLC also conducts business as S&I Labor Contractor, with the same address as S&H Farm Labor LLC described above in paragraph 9[1].

12. Upon information and belief, Mr. Urena is an individual residing in Arizona.

13. Upon information and belief, Ms. Urena is an individual residing in Arizona.

## NATURE OF ACTION

14. This is an action for breach of contract; breach of the implied covenant of good faith and fair dealing; damages suffered as a result of Defendants' violation of the MIGRANT AND SEASONAL AGRICULTURAL WORKER PROTECTION ACT, 29 U.S.C. § 1800, *et seq* arising out of Defendants' failure to pay S&H Farm's seasonal workers the wages due based on monies paid to S&H Farm for that purpose by Del Monte Southwest; unjust enrichment; indemnification; violation of Florida's Deceptive and Unfair Trade Practices Act, FLA. STAT. § 501.211; and violation of Arizona's Consumer Fraud Act, ARIZ. STAT. § 44-1522.

## FACTUAL BACKGROUND

15. In this case, Defendants breached the Agreement, including but not limited to, representations and warranties that S&H Farm's employees would timely receive their wages. Specifically, Defendants failed to pay wages to S&H Farm's employees despite having the funds to do so. To obtain those funds, Defendants fraudulently induced Del Monte Southwest to release those funds for payment of services by misrepresenting that such funds would be used to pay the wages of S&H Farm's employees in accordance with the Agreement and the Promissory

---

[1] S&H Farm Labor LLC and S&I Labor Contractor doing business as S&H Farm Labor LLC hereafter "S&H Farm" or collectively with Salvador Urena and Hermila Urena, "Defendants."

3

Note. Instead, Defendants absconded with the funds. Consequently, Del Monte Southwest, in the middle of its harvest of perishable produce, was forced to scramble for a new vendor to complete harvest. Del Monte Southwest suffered actual and consequential damage as a result of Defendants' multiple breaches of the Agreement and the Promissory Note.

### I. FARM LABOR AGREEMENT BETWEEN DEL MONTE SOUTHWEST AND S&H FARM

16. Del Monte Southwest operates several farms on which cantaloupes are grown and harvested. For the growing and harvesting season at issue, Del Monte Southwest contracted with S&H Farm, a third-party farm labor contractor, to provide its employees to seed, weed, and harvest the cantaloupes.

17. As a result of the parties' negotiations, Del Monte Southwest and S&H Farm on December 28, 2011 entered into an Agreement wherein S&H Farm agreed to provide qualified and competent workers to perform field work and equipment operation for the growing and harvesting of Del Monte Southwest's produce. *See* Exhibit A to the Agreement Exhibit 1.

18. Under the terms of the Agreement, S&H Farm was required, at its own expense, to furnish farm labor and harvesting labor to perform various services, including but not limited to the safe and efficient cutting, grading and packing of various produce. *See* Exhibit A to Exhibit 1.

19. Under the terms of the Agreement, S&H Farm was also solely responsible for:
   a. all wages when due to its employees and compliance with all laws and regulations governing the payment of such wages. *See* Exhibit 1, ¶ 3(a) – (c);
   b. supply of an effective and accurate WH-516 form and payment of all wages when due in compliance with the MIGRANT AND SEASONAL

91           WORKERS PROTECTION ACT and the H-2A Seasonal Worker Program *See*
92           Exhibit 1, ¶ 3(a) – (c);
93      c.   payment of all salaries, benefits, incentives, payroll taxes and all other
94           expenses relating to S&H Farm's workers *See* Exhibit 1, ¶ 3(a) – (c);
95      d.   compliance with all applicable federal, state, county, and city laws,
96           statutes, ordinance, and regulations *See* Exhibit 1, ¶ 7(a);
97      e.   maintaining a current, valid United States Department of Labor Farm
98           Contractor License *See* Exhibit 1, ¶ 7(b); and
99      f.   indemnifying Del Monte Southwest including reasonable attorneys' fees
100          and costs *See* Exhibit 1, ¶ 9.

101     20.  S&H Farm represented and warranted that it was a "financially viable entity and
102 able to meet its debts as they become due." *See* Exhibit 1, ¶ 7(i).

103     21.  S&H Farm represented and warranted that it would "not assign its duties or
104 obligations" under the agreement without the "prior written consent of" Del Monte Southwest.
105 *See* Exhibit 1, ¶ 13(b).

106     22.  In return for S&H Farm services, Del Monte Southwest compensated S&H Farm
107 at an hourly rate plus a surcharge for general farm labor. *See* Exhibit 1, ¶10(a)-(b). Del Monte
108 Southwest also compensated S&H Farm at a per box rate for harvesting services. *See* Exhibit A
109 to Exhibit 1, ¶4(a)-(b).

110     23.  In addition to the original signed Agreement, Del Monte Southwest and S&H
111 Farm executed multiple addenda to the Agreement throughout the course of performance of the
112 Agreement. Each Addendum states as follows:

   a. Addendum to the Agreement dated March 10, 2011, increasing rates for harvest production.

   b. Addendum to the Agreement dated May 11, 2011, adopting Food Safety Requirements.

   c. Third Addendum to the Agreement dated August 29, 2011, increasing the per box harvest rates.

   d. Addendum to the Agreement dated September 2, 2011, attaching the Promissory Note. *See* Exhibit 3.

## II. PROMISSORY NOTE BETWEEN DEL MONTE SOUTHWEST AND S&H FARM AND THE URENAS

24. On September 2, 2011, Del Monte Southwest, S&H Farm and the Urenas executed an Addendum to the Farm Labor Contractor Agreement which includes a promissory note wherein S&H Farm borrowed $75,000.00 from Del Monte Southwest ("the Promissory Note").

25. Defendants agreed to make four (4) installment payments of $18,750.00 to Del Monte Southwest between October 11, 2011 and November 11, 2011. *See* Addendum to Farm Labor Contractor Agreement attached as Exhibit 3 dated September 2, 2011, and Promissory Note dated September 2, 2011 attached hereto as Exhibit 2.

26. To make the installment payments, S&H Farm authorized Del Monte Southwest to deduct the installment amount from future payments for labor by Del Monte Southwest. The dates for installment payments were extended upon the request of S&H Farm in the Fourth Addendum to the Agreement. *See* Fourth Addendum to Farm Labor Contractor Agreement attached hereto as Exhibit 4.

27. The Promissory Note was secured by:

"a security interest in all vehicles, equipments, bank accounts and other tangible or intangible assets, whether presently owned or hereafter acquired, and the proceeds and products thereof, including (without limitation) all accounts, instruments, general intangibles and all other rights and proceeds arising upon any sale or other disposition thereof, and any and all proceeds of any of the forgoing collateral (the "collateral"). FLC represents and warrants that it is the true and lawful owner of the Collateral and that the Collateral will at all times be free from any lien, security interest or encumbrance."
*See* Exhibit 2

### III.   S&H FARM BREACHED THE AGREEMENT

28.   On October 21, 2011 S&H Farm sent Del Monte Southwest a Notice of Termination of Services Letter (attached hereto as Exhibit 4.)

29.   Weeks prior to S&H Farm's termination notice, S&H Farm made representations on several occasions that S&H Farm would not have sufficient funds to pay its employees. On October 26, 2011, in response to the termination notice and pursuant to ¶ 12 of the Agreement, Del Monte Southwest informed S&H Farm that Del Monte Southwest would not release funds without copies of payroll register and checks. S&H Farm provided various payroll reports between October 26 and October 28, 2011 and copies of the paychecks for S&H Farm's employees.

30.   Upon review of the payroll register and checks, Del Monte Southwest wired S&H Farm funds on October 28, 2011 to compensate S&H Farm for S&H Farm's labor for the pay period ending October 21, 2011.

31.   S&H Farm intentionally misrepresented that it would use the funds to pay the wages owed to S&H Farm's employees.

32.   On October 28, 2011, S&H Farm failed to pay its seasonal workers despite having the payroll checks available. Instead, S&H Farm gave its workers a letter (in Spanish) stating: Because of problems with Del Monte we can not continue operating. Contact Del Monte for

your pay. *See* Letter from S&H Farms to Seasonal Workers, certified English translation attached hereto as Exhibit 5.

33. Del Monte Southwest was concerned that S&H Farm's failure to timely pay wages would affect the seasonal workers who make up S&H Farm's workforce and in turn, severely impact the harvesting of the ripe cantaloupes. Consequently, Del Monte Southwest made arrangements to immediately wire an additional $120,868.00 to another licensed third-party farm labor contractor to distribute to the seasonal workers to avoid the delay in harvesting.

### IV. S&H FARM BREACHED THE PROMISSORY NOTE

34. By breaching the Agreement, Defendants also defaulted on the Promissory Note. Because Defendants made installment payments to Del Monte Southwest through deductions to payments for continued labor costs, Del Monte Southwest has been unable to collect the amount after Defendants ceased performing under their respective contracts with Del Monte Southwest.

35. All conditions precedent to the filing of this action have been performed, have occurred, or have been waived.

36. As a result of Defendants' wrongful conduct described herein, Del Monte Southwest has been required to retain undersigned counsel to represent it in this action and is obligated to pay them a reasonable fee for their services, for which Defendants are liable.

**Count I**
**(Breach of Express Contract)**

37. Del Monte Southwest realleges and incorporates by reference the preceding paragraphs 1 through 36.

38. On information and belief, Defendants have breached the Agreement in the following manner:

a. knowingly, willfully, and intentionally not performing its obligation to "pay all wages when due to its employees and comply with all laws and regulations governing the payment of such wages."

b. knowingly, willfully and intentionally not performing its obligation to "remain in compliance, with all applicable federal, state, county and city laws, statutes, ordinances and regulations, including, but not limited to, the MIGRANT AND SEASONAL AGRICULTURAL WORKER PROTECTION ACT, 29 U.S.C. § 1801, et seq."

39. Mr. Urena and Ms. Urena breached the Agreement in the same way because they have the same obligations under the first paragraph of the Promissory Note which incorporated ¶ paragraph 7(a) of the Agreement.

40. As a result of Defendants' breaches of the Agreement, Del Monte Southwest has been damaged. Moreover, Del Monte Southwest has suffered and will continue to suffer damage to its business reputation and good will.

Wherefore, Del Monte Southwest respectfully requests that this Court enter judgment against Defendants for the damages incurred as the result of Defendants' breach of contract, together with reasonable attorneys' fees and costs.

**Count II**
**(Breach of Implied Covenant of Good Faith and Fair Dealing)**

41. Del Monte Southwest realleges and incorporates by reference the preceding paragraphs 1 through 36.

42. Del Monte Southwest and S&H Farm entered into the Agreement, which gave rise to S&H Farm's duty to act fairly and in good faith with respect to meeting its obligations under such Agreement. Implied in the Agreement is S&H Farm's obligation to act fairly and in

good faith with Del Monte Southwest and to refrain from depriving Del Monte Southwest of the benefit of the Agreement.

43. S&H Farm has breached the implied covenant of good faith and fair dealing by breaching express terms of the Agreement, including, among other things:

    a. Failing to pay seasonal workers for services rendered;

    b. Thereby forcing Del Monte Southwest to pay JY Harvesting in order to ensure that the seasonal workers would be compensated for time worked; and

    c. Failure to pay the Promissory Note.

44. As a result of S&H Farm's breaches, Del Monte Southwest has been damaged and will continue to suffer damage to its business reputation, good will and the loss of business opportunities and profits it would have made but for S&H Farm's acts.

Wherefore, Del Monte Southwest respectfully requests that this Court enter judgment against S&H for the damages incurred as the result of S&H Farm's breach of the implied covenant of good faith and fair dealing, together with reasonable attorneys' fees and costs

## Count III
### (Breach of the Promissory Note)

45. On September 2, 2011, Del Monte Southwest and S&H Farm executed an Addendum to the Agreement. Defendants borrowed $75,000.00 from Del Monte Southwest and agreed to make four (4) installment payments of $18,750.00 to Del Monte Southwest between October 11, 2011 and November 11, 2011. *See* Exhibits 2 – 3.

46. To make the installment payments, Defendants authorized Del Monte Southwest to deduct the installment amount from future payments for labor by Del Monte Southwest as payments from Defendants based on the Promissory Note which the parties entered into.

47. By breaching the Agreement, Defendants also defaulted on the Promissory Note. Because Defendants made installment payments to Del Monte Southwest through deductions to payments for continued labor costs, Del Monte Southwest has been unable to collect the amount due without an operating Agreement.

48. Two deductions were made but Defendants owes $37,500.00 on the Promissory Note.

Wherefore, Del Monte Southwest respectfully requests that this Court enter judgment against Defendants for the damages incurred as the result of the unjust enrichment of Defendants, together with reasonable attorneys' fees and costs.

**Count IV**
**(Violation of 29 U.SC. § 1832(a))**

49. Del Monte Southwest realleges and incorporates by reference the preceding paragraphs 1 through 36.

50. Del Monte Southwest is a person as defined by 29 U.S.C. § 1802(9) ("The term 'person' means any individual, partnership, association, joint stock company, trust, cooperative, or corporation.") Under 29 U.S.C. § 1854(a):

> "any person aggrieved by a violation of this chapter or any regulation under this chapter by a farm labor contractor, agricultural employer, agricultural association, or other person may file suit in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy and without regard to the citizenship of the parties and without regard to exhaustion of any alternative administrative remedies provided herein."

51. Defendants violated section 29 U.S.C. § 1832(a) by failing to pay their seasonal agricultural workers the wages owed to the workers when due.

52. Del Monte Southwest has suffered damages as a result of Defendants' violation of 29 U.S.C. § 1832(a) because Del Monte paid Defendants the wages due to its employees.

Defendants violated the statute by failing to pay wages forcing Del Monte Southwest to pay the wages due to JY Harvesting to ensure that the seasonal workers would be paid wages for the time worked.

53. As a result of Defendants' violation of 29 U.S.C. § 1832(a), Del Monte Southwest has been damaged in the amount of $120,868.00 and has suffered and will continue to suffer damage to its business reputation, good will and the loss of business opportunities and profits.

Wherefore, Del Monte Southwest respectfully requests that this Court enter judgment against Defendants for the damages incurred as the result of Defendants' statutory violation, together with reasonable attorneys' fees and costs.

**Count V**
**(Unjust Enrichment of $158,368.00)**

54. Should no agreement apply to the relationship between the parties, Del Monte Southwest alternatively brings this unjust enrichment claim of $158,368.00 against Defendants.

55. As a result of the individual and combined actions of Defendants listed above, Defendants have benefited from the payments Del Monte Southwest rendered and expenses incurred to Del Monte Southwest.

56. Defendants have retained money in violation of the Agreement and benefited from retaining the principal, interest and profits that Del Monte Southwest would otherwise have received if Del Monte Southwest had not had to pay an additional $120,868.00 to JY Harvesting and the $37,500.00 owed to Del Monte Southwest based on the Promissory Note.

57. Defendants knew, or reasonably should have known, that their retention of money, interest and profits owed to Del Monte Southwest that it gained directly from their unlawful use of the funds paid under the terms of the Agreement and the Promissory Note would injure Del Monte Southwest.

58. Defendants acted willfully, intentionally, deliberately, maliciously, and in bad faith to injure Del Monte Southwest. Del Monte Southwest has no adequate remedy at law for many of these injuries.

59. It would be unjust for Defendants to retain the benefits conferred upon them as a result of their unlawful use of funds paid and their fraudulent statements to laborers concerning Del Monte Southwest.

Wherefore, Del Monte Southwest respectfully requests that this Court enter judgment against Defendants for the damages incurred as the result of the unjust enrichment of Defendants of $158,368.00, together with reasonable attorneys' fees and costs.

## Count VI
## (Indemnification)

60. Del Monte realleges and incorporates by reference the preceding paragraphs 1 through 36.

61. On November 1, 2011 the United States of America Department of Labor issued a subpoena duces tecum against Del Monte concerning the wage period from July 22, 2011 to October 19, 2011.

62. Defendants were responsible for the wages of the seasonal workers during this entire period. *See* Subpoena Duces Tecum, attached hereto as Exhibit 6.

63. In ¶ 9 of the Agreement, Defendants agreed "to indemnify, defend, and hold harmless" Del Monte Southwest "from any and all claims, demands, liability, loss, damage, costs, governmental investigations, or expenses (including reasonable attorneys' fees, costs and expenses)" arising out of the services provided by Defendants per the Agreement. *See* Exhibit 1, ¶ 9.

64. Because of Defendants' failure to pay its seasonal workers, Del Monte Southwest has incurred costs as a result of the Department of Labor investigation as well as damages to Del Monte Southwest's goodwill and reputation.

65. Defendants are contractually obligated to indemnify Del Monte Southwest for the costs associated with the Department of Labor subpoena and investigation.

66. Further, on October 28, 2011 Del Monte Southwest wired $120,868.00 to JY Harvesting due to Defendants' failure to pay wages to Defendants' seasonal workers. Defendants must indemnify Del Monte Southwest for the $120,868.00 and all costs associated with the transfer.

67. In ¶ 9 of the Agreement, Defendants agreed "to indemnify, defend, and hold harmless" Del Monte Southwest "from *any and all cl*aims, demands, liability, loss, damage, costs, governmental investigations, or expenses (including reasonable attorneys' fees, costs and expenses)" arising out of the services provided by Defendants per the Agreement. *See* Exhibit 1, ¶ 9 (*emphasis added*).

68. The $120,868.00 and costs incurred arise directly out of the services Defendants contracted to perform under the Agreement. As such, Defendants are contractually obligated to indemnify Del Monte Southwest.

Wherefore, Del Monte respectfully requests that this Court enter judgment against Defendants for the damages incurred as the result of the Department of Labor's subpoena duces tecum and damages incurred as the result of the $120,868.00 transfer, together with reasonable attorneys' fees and costs.

**Count VII**
**(Violation of Florida's Deceptive and Unfair Trade Practices Act)**

69. Del Monte realleges and incorporates by reference the preceding paragraphs 1 through 36.

70. Pursuant to Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA"), FLA. STAT. §501.201 et seq., Del Monte Southwest brings a claim against Defendants for violation of Section 501.211.

71. FDUTPA declares "unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade and commerce" unlawful. §501.204, Florida Statutes (2008).

72. As more fully described above, Defendant at all times engaged in "trade or commerce" by "providing" a thing of value. Defendants provided seasonal farm labor for Del Monte Southwest.

73. The actions of Defendants, described above and including, without limitation, failing to abide by its representations that the money wired to Defendants would be paid to Defendants' employees, constitutes an unfair trade practice pursuant to Section 501.203(8), FLA. STAT. (2008).

74. As a result of Defendants' unfair practices, Del Monte Southwest has suffered damages including, without limitation, $120,868.00. Moreover, Del Monte Southwest has suffered and will continue to suffer damage to its business reputation and good will.

Wherefore, pursuant to Sections 501.2105 and 501.211, FLA. STAT., Del Monte Southwest is entitled to recover its actual damages, plus attorney's fees and costs.

**Count VIII**
**(Violation of Ariz. Stat. § 44-1522)**

75. Should a claim under the Florida Deceptive and Unfair Trade Practices Act, FLA. STAT. §501.201 et seq, not apply, Del Monte Southwest alternatively pleads this claim for violation of Arizona's Consumer Fraud Act, ARIZ.. STAT. § 44-1522.

76. Del Monte Southwest realleges and incorporates by reference the preceding paragraphs 1 through 36.

77. Arizona's Consumer Fraud Act, ARIZ.. STAT. § 44-1522 prohibits "any deception, deceptive act or practice, fraud, false pretense, false promise, misrepresentation" and "concealment, suppression or omission of any material fact." ARIZ.. STAT. § 44-1522.

78. As more fully described above, Defendants' misrepresented that the money wired to S&H Farm would be used to pay S&H Farm's employees. The false representations were intentional and induced reliance on the part of Del Monte Southwest.

79. Defendants omitted material facts regarding their intention to pay their employees. These omissions induced Del Monte Southwest to wire Defendants $120,868.00.

80. Defendants' misrepresentations were the actual and proximate cause of Del Monte Southwest's injury, including but not limited to, the $120,868.00 wired to JY Harvesting, the $37,500.00 owed on the Promissory Note, and continued damage to Del Monte Southwest's business reputation and goodwill.

Wherefore, pursuant to Sections 44-1522, ARIZ. STAT., Del Monte Southwest is entitled to recover its actual damages, plus attorney's fees and costs.

## CONCLUSION

WHEREFORE, Del Monte Southwest prays that this Court award it compensatory damages in excess of $158,368.00, any consequential damages due to the harm to Del Monte

Southwest's business reputation and good will, reasonable attorneys' fees and costs, and any such other relief as this Court may deem just and proper.

Dated: This 23rd day of November, 2011.

Respectfully submitted,

**K&L GATES LLP**
*Attorneys for Del Monte Fresh Produce (Southwest), Inc.*
Wachovia Financial Center – Suite 3900
200 S. Biscayne Boulevard
Miami, Florida 33131
Tel: (305) 539-3300
Fax: (305) 358-7095
By: _____
**Carol C. Lumpkin**
Florida Bar No. 0797448
carol.lumpkin@klgates.com
**Annie T. Zaffuto**
Florida Bar No. 0786101
annie.zaffuto@klgates.com